In re 240 NORTH BRAND PARTNERS, LTD., a California limited partnership, Debtor.

240 NORTH BRAND PARTNERS, LTD., a California limited partnership, Appellant,

v.

COLONY GFP PARTNERS, L.P. and GFP Asset One Limited Partnership, Appellees.

BAP No. CC–95–2180–JHA1.
Bankruptcy No. LA 92–22977–AA.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted July 24, 1996.

Decided Aug. 29, 1996.

Ivan L. Kallick, Los Angeles, CA, for appellant 240 North Brand Partners, Ltd.

Gary F. Torrell and Gwyneth A. Campbell, Los Angeles, CA, for appellees Colony GFP Partners, L.P. and GFP Asset One Ltd. Partnership.

Before: JONES, HAGAN, and ALLEY,[1] Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

## SUMMARY

A secured creditor obtained relief from stay to foreclose on the debtor's principal asset, a commercial building. The debtor attempted to allow the principal tenant out of an unfavorable lease the day before the foreclosure sale. The bankruptcy court refused to approve this agreement, forcing the lessee to attorn to the building's new owner. The debtor appeals. **We AFFIRM.**

## I. FACTS

240 North Brand Partners, Ltd. ("240 North") is a limited partnership which acquired an ownership interest in a commercial building (the "Property") in 1986. The Property is located at 240 North Brand Boulevard in Glendale, California. Glendale Federal Savings and Loan loaned 240 North $4.8 million to make this acquisition and took a first deed of trust and assignment of rents on the Property. On June 22, 1988, First American Title Company of Los Angeles ("FATCOLA") leased approximately 18,253 square feet of space at the Property. The lease term ran until October 31, 2006.

On April 1, 1992, 240 North filed a chapter 11[2] petition. On its schedules, it listed the value of the Property as $6.5 million, subject to liens totalling $6.375 million. On June 24, 1994, Colony GFP Partners, L.P. ("Colony") acquired the first deed of trust and promissory note from Glendale Federal. On May 12, 1995, the bankruptcy court granted Colony's motion for relief from the automatic stay to pursue its state law foreclosure remedies and "[e]xercise all rights and remedies under applicable nonbankruptcy law in and to all rents, issues and profits from the ... property...." By this time, the total amount of liens on the property exceeded $7.3 million,

and 240 North had been unable to propose a confirmable plan.

Because FATCOLA's monthly lease obligation was higher than the prevailing market rate, Colony did not want to extinguish the lease when it foreclosed. FATCOLA's lease authorized "any mortgagee, trustee or ground lessor" to elect—after written notice—to subordinate the deed of trust to the lease. So on Friday, June 16, 1995, Colony recorded and gave to FATCOLA written notice of Colony's election to subordinate the deed of trust to the lease. At the same time, 240 North and FATCOLA were in negotiations, as they characterized it, "to realize upon the value of the [l]ease...." On Monday morning, June 19, 1995, after a weekend of hurried negotiations, 240 North and FATCOLA signed an agreement which contained the following provisions:

4. Debtor and FATCOLA hereby modify the terms and conditions of the Lease (the "Lease Modification") as follows:

"(a) Lessee (FATCOLA) shall have the on-going right to terminate the Lease without further liability upon thirty (30) days written notice to Lessor, or its successor in interest."

. . . .

The foregoing Lease Modification shall be effective immediately, subject to the condition subsequent of the entry of an order of the Bankruptcy Court following appropriate notice to all parties in interest in the Bankruptcy Case approving such modification and determining that the Lease Modification is binding on the Debtor, its estate, and its present or former secured and unsecured creditors, including [Colony] ... [and] any purchaser at any foreclosure sale by Colony.

5. Whether or not the Lease Modification is approved by the Bankruptcy Court, the Debtor hereby rejects the Lease and shall promptly seek an order of the Bankruptcy Court following appropriate notice to all parties in interest approving such

---

1. Honorable Frank R. Alley, Bankruptcy Judge for the District of Oregon, sitting by designation.

2. Unless otherwise indicated, all references to Chapters, Sections and Rules are to the Bank-

ruptcy Code, 11 U.S.C. §§ 101, *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001, *et seq.*

rejection pursuant to 11 U.S.C. § 365, together with a determination that the Lessee (FATCOLA), pursuant to 11 U.S.C. § 365(h), may remain in possession of the Leased Premises so long as it continues to pay the rent reserved in the Lease, subject to a right to terminate its occupancy of the Leased Premises without further liability upon thirty (30) days written notice to lessor or its successor in interest.

6. In the alternative, to the extent grounds exist under applicable non-bankruptcy law based upon subsequent developments, including foreclosure by Colony, the Debtor shall seek the entry of an order of the Bankruptcy Court establishing that the Lease has been terminated by operation of law and that FATCOLA is, as a result thereof, authorized to occupy the Leased Premises on a month-to-month basis at the rent reserved in the Lease, subject to termination of its occupancy without further liability upon thirty (30) days written notice to Lessor or its successor in interest.

7. On the first business day upon which the order of the Bankruptcy Court granting the relief set forth in Paragraphs 5 and/or 6 or 7 is enforceable, which day is more than 10 days following the entry of such order, FATCOLA shall pay the sum of $180,000 to Debtor and waive any claim it may have against the Debtor as a result of the rejection of the Lease or the termination of the Lease by operation of law.

In other words, FATCOLA agreed to pay 240 North $180,000 if 240 North successfully released FATCOLA from its lease obligations, either through bankruptcy court approval of the lease modification or the lease rejection, or by successfully arguing that Colony's foreclosure would extinguish the lease.

Hours after the above agreement was signed, Colony conducted a nonjudicial foreclosure sale and sold the Property to GFP Asset One Limited Partnership ("GFP") for a full credit bid. Also that same day, 240 North filed a motion in which it sought either court approval of the proposed lease modification or permission to reject FATCOLA's

lease. In addition, 240 North claimed that Colony's notice of subordination was a violation of the stay. A hearing on this motion was held on August 9, 1995. FATCOLA and 240 North's basic argument was that by "manipulat[ing] the priority of liens," Colony had exercised control over property of the estate in violation of the automatic stay and "[made] off with a valuable asset of the estate for no consideration...." The bankruptcy court disagreed and denied the motion, stating that 240 North's last-minute effort to let FATCOLA walk away from the lease created "a real question of whether or not Debtor violated the Debtor's fiduciary duty to the estate." 240 North appeals.[3]

## II. ISSUES

1. Did the bankruptcy court err in holding that Colony's subordination election and foreclosure were not a violation of the automatic stay?

2. Did the bankruptcy court err in holding that Colony properly subordinated the lease?

3. Did the bankruptcy court err in determining that 240 North no longer had an interest in the lease after foreclosure?

4. Did the bankruptcy court err in refusing to approve the agreement between FATCOLA and 240 North?

## III. STANDARD OF REVIEW

A bankruptcy court has discretion when ruling on a § 363(b) motion. Therefore, we review the bankruptcy court's decision to deny 240 North's motion for abuse of discretion. *In re Irvin,* 950 F.2d 1318, 1320 (7th Cir.1991); *In re Lionel Corp.,* 722 F.2d 1063, 1069 (2d Cir.1983). Whether or not someone has violated the automatic stay is a question of law, which we review *de novo.* *In re Peters,* 184 B.R. 799, 801 (9th Cir. BAP 1995). The effect of Colony's foreclosure sale on FATCOLA's lease is a question of California law, reviewed *de novo.*

---

3. FATCOLA also filed a timely notice of appeal. However, it subsequently renegotiated the lease with the new owner of the building, and dismissed its appeal.

## IV. DISCUSSION

240 North raises four issues on appeal. First, it argues that Colony violated the automatic stay by recording the notice of subordination. Second, it argues that Colony did not have authority to subordinate the lease. Third, it argues that even if the subordination and foreclosure were valid, they did not effect 240 North's interest in the lease. Finally, it argues that the bankruptcy court erred by not approving the lease modification agreement because it was a proper exercise of 240 North's business judgment.

### A. Did Subordination of the Lease Violate the Automatic Stay?

■ Section 362 prohibits, among other things, "any act to obtain possession of property of the estate ... or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3) (1994). 240 North makes a very unique argument that subordinating the deed of trust to the lease was a violation of the stay. In short, it contends that by "re-ordering the priorities of various interests in the Debtor's property," Colony was able to acquire the lease—a valuable asset of the estate—without court approval or notice. We disagree.

First, the bankruptcy court had already granted Colony—after notice and a hearing—relief from the stay to "[e]xercise all rights and remedies under applicable non-bankruptcy law in and to all rents, issues and profits from the ... property...." Colony's right to subordinate its deed of trust was a provision of FATCOLA's lease. Such subordination clauses provide additional security for a lender, who knows that if it is forced to foreclose, it has the ability to prevent the extinguishment of all the tenants' leases, thereby providing the lender with a building full of paying tenants. This not only makes assuming ownership of the building more palatable, it also makes the building more marketable at the foreclosure sale. This remedy was certainly within the scope of the order granting relief from stay. Therefore, Colony's election to subordinate its deed of trust to FATCOLA's lease was not a violation of the stay.

■ Second, if Colony had not subordinated the deed of trust, FATCOLA's lease—along with 240 North's interest in that lease—would have been extinguished through foreclosure. *Dover Mobile Estates v. Fiber Form Prods., Inc.,* 220 Cal.App.3d 1494, 1498, 270 Cal.Rptr. 183 (Cal.Ct.App. 1990). Under 240 North's argument, anytime a secured creditor wanted to foreclose on commercial property containing leases junior in priority, the secured creditor would be forced to bring a different motion for relief from stay for the building and each individual lease. This is clearly not necessary. A debtor cannot realistically expect to default on his mortgage payments while continuing to collect rents from the building's tenants. When a business borrows money from a lending institution, it takes the inherent risk that it might default and as a result, lose its interests in the building and the leaseholds. When a bankruptcy court grants relief from stay and allows a secured creditor to foreclose on a commercial building, it takes into consideration the effect that foreclosure will have on the debtor's interest in any leaseholds. For these reasons, we hold that the order granting relief from the stay encompassed Colony's right to elect to subordinate its deed of trust to FATCOLA's lease.

### B. Notice of Election to Subordinate the Deed of Trust

240 North next argues that Colony's election of subordination was ineffectual because the lease only allowed a "mortgagee, trustee or ground lessor" to make such an election. Since Colony was the beneficiary of the deed of trust, 240 North argues that it did not have the right to make the election.

■ This argument raises an issue of standing. In order to have standing to appeal, a party must be "directly and adversely affected pecuniarily" by the bankruptcy court decision. *In re Pecan Groves of Arizona,* 951 F.2d 242, 245 (9th Cir.1991) (quoting *In re Fondiller,* 707 F.2d 441, 442 (9th Cir. 1983)). Since FATCOLA was the tenant under the lease, it clearly had standing to raise the issue of whether the subordination election was effective. However, FATCOLA dismissed its appeal after renegotiating its lease

with the Property's new owner. 240 North's interest in the lease would have been terminated by foreclosure in the absence of the subordination of the deed of trust, however, so it is hard to see how it is a "person aggrieved." *Fondiller,* 707 F.2d at 443. 240 North's only pecuniary interest in extinguishment of the lease was the provision in the lease modification agreement which stated that FATCOLA would give 240 North $180,-000 if the lease was extinguished by foreclosure. However, this agreement was never approved by the bankruptcy court and is therefore not enforceable.

■ Even assuming that 240 North has standing to contest Colony's right to subordinate FATCOLA's lease, we hold that Colony did have the right to elect to subordinate the lease. When a mortgage is used as security for a loan, a two-party transaction is created. The debtor is known as the mortgagor, while the lender is referred to as the mortgagee. When a deed of trust is used as security for a loan, however, a three-party transaction is created. The debtor is called the trustor while the creditor is known as the beneficiary. In addition, a "neutral third party," known as the trustee, is also required. *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 44 Cal.Rptr.2d 352, 357, 900 P.2d 601, 606 (1995) (en banc). 240 North correctly points out that many California statutes differentiate between the respective rights and duties of the trustee and the beneficiary of a deed of trust. However, the California legislature did not draft the lease in question, so these statutes are irrelevant in determining the intent of the drafters of the lease. In addition, the California statutory scheme also allows the beneficiary concurrent rights with the trustee in many things, such as the right to record a notice of default, *see* Cal.Civ.Code § 2924 (West 1996), and the right to conduct a judicial foreclosure of the property. *Monterey S.P. Partnership v. W.L. Bangham, Inc.,* 49 Cal.3d 454, 261 Cal.Rptr. 587, 590, 777 P.2d 623, 626 (1989) (en banc).

Colony argues that mortgagees and beneficiaries are functional equivalents, and since beneficiaries can—and often do—act as trustees, the clear intent of the lease provision is to allow a beneficiary to subordinate the lease. California case law supports this argument. "[M]ortgagees and trust deed beneficiaries alike hold security interests in property encumbered by mortgages and deeds of trust...." *Id.* at 591, 777 P.2d at 627. The terminology creates a difference without distinction.

> As we explained in describing "the anomalous nature of deeds of trust in this state" (*Bank of Italy etc. Assn. v. Bentley* (1933) 217 Cal. 644, 657, 20 P.2d 940), "deeds of trust, except for the passage of title for the purpose of the trust, are practically and substantially only mortgages with a power of sale...." (Ibid.) In practical effect, if not in legal parlance, a deed of trust is a lien on the property.
>
> It would be inconsistent with *Bank of Italy,* supra, 217 Cal. 644, 20 P.2d 940, to deny the beneficiaries the rights of mortgagees recognized in *Whitney* [*v. Higgins* ] supra, 10 Cal. 547, merely because the beneficiaries' security interest took the form of a deed of trust, which conveys "title" to a trustee.

*Id.* at 590, 777 P.2d at 626.

In addition, the lease in question is a standard industrial form lease consisting of six pages of very small type. It is doubtful that either 240 North, FATCOLA, or the original lender bargained over the wording of the subordination provision or its potential import. We hold, given the circumstances under which 240 North objects to the subordination election, that it would be inequitable to deprive Colony of a right to subordinate FATCOLA's lease. Therefore, we hold that Colony's election to subordinate the lease was effective.

**C. Separation of the Reversionary Interest from the Present Right to Receive Rents**

■ 240 North next argues that under California law, a landlord may transfer his reversionary interest in a leasehold while retaining the right to receive rent. Therefore, 240 North argues that Colony's subordination of the lease and subsequent foreclosure only gave it a reversionary interest in the lease, not the present right to collect

rents. As support, 240 North cites the case of *Commonwealth Memorial, Inc. v. Telophase Society of America, Inc.*, 63 Cal. App.3d 867, 134 Cal.Rptr. 58 (Cal.Ct.App. 1976).

The main problem with 240 North's argument is that no such transfer ever occurred. In *Commonwealth Memorial*, Memorial Properties, Inc. owned a cemetery. It then leased a portion of the cemetery to The Telophase Society of America, Inc. Later, Memorial Properties sold the cemetery to Commonwealth Memorial, but in the sales agreement reserved its "right, title or interest" in the lease with Telophase. Commonwealth Memorial subsequently tried to evict Telophase, claiming that it was violating certain provisions of the lease. The court dismissed the action, holding that Commonwealth had no standing to bring an unlawful detainer action. The California Court of Appeals affirmed, holding that the sales agreement had given Commonwealth Memorial only a reversionary interest in the leasehold. *Id.* at 870, 134 Cal.Rptr. 58. The crucial issue was whether the parties to the sales agreement had "intended that Memorial would remain [Telophase's] landlord." *Id.*

This case does not support 240 North's contention that it remains FATCOLA's landlord after Colony's foreclosure. In order to rely on *Commonwealth Memorial*, 240 North would have had to sell the property to Colony while reserving its present rights in the FATCOLA lease. Any attempt by 240 North and FATCOLA to separate the title to the lease from its reversionary interest would have been ineffective as against the purchaser of the Property at the foreclosure sale. *See, e.g., R–Ranch Markets # 2, Inc. v. Old Stone Bank*, 16 Cal.App.4th 1323, 1328, 21 Cal.Rptr.2d 21 (Cal.Ct.App.1993) (holding that any lease modifications made after recordation of a deed of trust are extinguished by foreclosure). Under California law, foreclosure of the Property extinguished all of 240 North's rights in the lease.

## D. The Bankruptcy Court's Refusal to Approve the Lease Modification

 Finally, 240 North argues that the bankruptcy court erred by not approving the lease modification. We disagree. 240 North's attempt to modify the lease not only conflicted with its duties under the Bankruptcy Code, but was also an invalid attempt to jeopardize Colony's security under California state law.

With certain exceptions not applicable in this case, § 1107 states that "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee...." 11 U.S.C. § 1107 (1994). Section 363 states that a trustee (or debtor in possession) may only "use, sell, or lease" property outside the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1) (1994). In addition, a bankruptcy court must provide any creditor with a security interest in the property with adequate protection of that interest. 11 U.S.C. § 363(e) (1994). Neither party disputes that 240 North's proposed modifications to the lease involved the use of estate property outside the ordinary course of business and therefore required court approval after notice and a hearing.

 "The requirements of section 363(b) protect the creditors' interest in the assets of the estate." *U.S. v. Goodstein*, 883 F.2d 1362, 1367 (7th Cir.1989), *cert. denied*, 494 U.S. 1007, 110 S.Ct. 1305, 108 L.Ed.2d 481 (1990) (quoting *In re First Int'l Services Corp.*, 25 B.R. 66, 70 (Bankr.D.Conn.1982)). As a result, debtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification. *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir.1983).

[12] In addition to proving that the proposed sale has a valid business justification, the debtor must also show that the sale is proposed in good faith. *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D.Cal.1991). " 'Good faith' encompasses fair value, and further speaks to the integrity of the transaction. Typical 'bad faith' or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers." *Id.* at 842. Applying these standards, 240 North failed to provide any business justification for attempting to let a lessee

virtually walk away from a lucrative lease. In addition, the bankruptcy judge noted that proposed lease modification and/or rejection seemed to have been proposed in bad faith.

██ In any event, California case law is clear that the lease modification would have been extinguished by Colony's foreclosure. "When property is sold under a trust deed, the purchasers acquire title free and clear of all encumbrances subsequent to the deed of trust." *R–Ranch Markets,* 16 Cal.App.4th at 1328, 21 Cal.Rptr.2d 21. Such encumbrances include lease amendments or modifications.

> The policy underlying the rule is to protect lending institutions from fraudulent amendments to leases which would encumber the value of their acquired property. If the rule were different, lending institutions would be discouraged from making loans since they would have no assurances that the borrower and senior leaseholder would not drastically reduce the value of the lease, thereby reducing the value of the property and the security.

*Id.* (citing *First Nat'l Bank v. Coast Consol. Oil Co.,* 84 Cal.App.2d 250, 190 P.2d 214 (Cal.Ct.App.1948)). This is exactly what 240 North and FATCOLA attempted to do with their 11th hour lease modification agreement which would have allowed FATCOLA to terminate the lease on thirty days' notice.

## V. CONCLUSION

The bankruptcy court held that Colony did not violate the automatic stay. The bankruptcy court then denied 240 North's motion to either approve the lease modification or allow 240 North to reject the lease. **We AFFIRM.**