**GOLDILOCKS CORPORATION OF SOUTHERN CALIFORNIA, INC.,**
Plaintiff—Appellant,

v.

**RAMKABIR MOTOR INN, INC., Defendant,**

and

**Philippine National Bank,**
Defendant—Appellee.

No. 00–55924.

D.C. No. CV–98–09408–CAS–CTx.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2001.

Decided Jan. 9, 2002.

Before BRIGHT,* KOZINSKI, and W. FLETCHER, Circuit Judges.

MEMORANDUM **

Plaintiff Goldilocks Corp. appeals the district court's grant of summary judgment in favor of defendant Philippine National Bank (PNB) on plaintiff's fraud and negligent misrepresentation claims. The claims stem from PNB's alleged misrepresentations concerning proposed leases after PNB foreclosed on and became the new owner of a property that plaintiff was then leasing. Plaintiff alleges that PNB's misrepresentations caused it to continue to stay at the property rather than search for more economical lease terms elsewhere.

The district court ruled that the non-disturbance clause in the subsequent Subordination Agreements between plaintiff and the previous landlord preserved the prior leases despite foreclosure. Therefore, according to the district court, plaintiff could not have detrimentally relied on the alleged misrepresentations because it was already obligated to stay at the property. Relying on the attornment clause rather than the non-disturbance clause in the leases, we affirm.

---

I

Plaintiff signed four leases with the original landlord, all containing the following Subordination, Non-Disturbance, Attornment (SNDA) provision:

Upon request of the Landlord, Tenant will in writing subordinate its rights hereunder to the lien of any mortgage or deed of trust, to any bank, insurance company or other lending institution, now or hereafter in force against the Premises, and to all advances made or hereafter to be made upon the security thereof. In the event any proceedings are brought for foreclosure, or in the event of the exercising of the power of sale under any mortgage or deed of trust made by the Landlord covering the Premises, the Tenant shall attorn to the purchaser upon any such foreclosure of sale and recognize such purchaser as the Landlord under this Lease.

The provisions of this Article to the contrary notwithstanding, and so long as Tenant is not in default hereunder, this Lease shall remain in force and effect for the full term hereof.

As part of the original landlord's loan transaction with PNB, plaintiff and the landlord entered into the following Subordination Agreements for two of the leases:

NOW, THEREFORE, for valuable consideration, receipt of which is hereby acknowledged, and in order to induce Beneficiary [PNB] to make the loan above referred to, it is hereby declared, understood and agreed that the Deed of Trust in favor of Beneficiary, and any renewal or extensions thereof, shall be and remain at all times a lien or charge on the Real Property prior and superior

---

* Honorable Myron H. Bright, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

to the Lease and all rights of the Lessor and Lessee thereunder; *provided, however,* that so long as Lessee is not in default under the Lease, it shall remain in full force and effect for its term as provided in such Lease.

On December 26, 1996, PNB became the owner of the leased property pursuant to a non-judicial foreclosure. PNB thereafter provided plaintiff with several monthly rent statements indicating the unpaid balance of monthly rent as well as a Summary of Past Due Account as of November 1997. In March 1997, plaintiff signed two new leases ("1997 leases") at a savings of $416,410.64 over the life of the leases. On April 19, 1997, PNB's agent returned the leases to plaintiff with a letter explaining that the leases had to be approved by PNB's main branch, which was merely a technicality, and that the parties should proceed under the terms and conditions of the new 1997 leases.

Plaintiff made rental payments under the terms of the 1997 leases from April 1997 through November 1997. In a letter dated October 20, 1997, plaintiff was advised that the 1997 leases had not been approved, and that plaintiff was still obligated under the original leases signed with the previous landlord. PNB has not sought to recover the difference between the rent under the 1997 leases and the original leases for payments made before the rejection of the 1997 leases. It seeks only to enforce the original leases for the period following the rejection of the 1997 leases. Plaintiff initiated this action based on the 1997 leases.

## II

■ Fraud and negligent misrepresentation require justifiable reliance on misrepresentations and damages as a result of that reliance. To prove reliance, plaintiff must show that it has somehow changed its position in reliance on the fraudulent misrepresentation. *See Kruse v. Bank of Am.,* 202 Cal.App.3d 38, 62–63, 248 Cal.Rptr. 217 (1988).

■ If the allegedly induced conduct–staying on the leased property–was a preexisting obligation, then the fact that Goldilocks actually stayed there does not amount to detrimental reliance, and plaintiff's claims must fail. *See Conrad v. Bank of Am.,* 45 Cal.App.4th 133, 157–58, 53 Cal.Rptr.2d 336 (1996), *rejected on other grounds in Lovejoy v. AT & T Corp.,* 92 Cal.App.4th 85, 94, 111 Cal.Rptr.2d 711 (2001); *Auerbach v. Great W. Bank,* 74 Cal.App.4th 1172, 1185–87, 88 Cal.Rptr.2d 718 (1999). Therefore, we consider whether Goldilocks was already obligated to remain on the premises under the original leases after PNB's foreclosure.

■ In California,

[a] lease is generally deemed to be subordinate to a deed of trust if the lease was created after the deed of trust was recorded. On the other hand, when the lease was executed and recorded prior to the recordation of the deed of trust ... the lien of the trust deed is junior to the estate of the lessee.... A lease which is subordinate to the deed of trust is extinguished by the foreclosure sale.

*Dover Mobile Estates v. Fiber Form Prods., Inc.,* 220 Cal.App.3d 1494, 1498, 270 Cal.Rptr. 183 (1990) (citations and quotation marks omitted). Because two of the leases were senior to the deed, those leases would clearly have survived the foreclosure intact.

However, the subsequent Subordination Agreements re-ordered this priority, making the two leases junior to the deed. *See id.* ("A lease may also be deemed subordinate by virtue of a subordination agreement."). The key question is what saving

effect, if any, the non-disturbance clause and attornment clause had on the parties' lease obligations after the foreclosure.

### 1. The Non–Disturbance Clause

■■■ The district court relied solely on the non-disturbance clause in the Subordination Agreements to find that the original lease obligations continued after foreclosure. Non-disturbance clauses, however, are primarily inserted to protect a *tenant* from the effect of a subordination clause.

The SNDA consists of three distinct agreements: an agreement by the tenant to subordinate its leasehold interest to the lender's mortgage; an agreement *by the lender* not to disturb the *tenant's enjoyment* of its leasehold interest after foreclosure; and an agreement by the tenant to recognize the lender as its landlord after foreclosure.

.    .    .    .    .

The non-disturbance provision *allows the tenant,* so long as it is not in default, to continue its lease despite the default of its landlord under the lender's loan. The non-disturbance provision is an agreement between the lender and the tenant that, if the lender forecloses on the landlord, *the lender will continue to recognize the tenant's right* to enjoy its leasehold interest. Such a provision gives certainty and stability *to the tenant* and encourages the tenant to invest in improvements to the leasehold interest.

.    .    .    .    .

Linking attornment to non-disturbance is even more important. The lender that agrees to non-disturbance also must obtain attornment; *otherwise, the tenant is in a position to leave or hold the lender to the lease,* as the market dictates.

Arnold B. West & Sidney A. Keyles, *Does the A in Your SNDA Work?,* 7 Probate & Property 54 (1993).

This view is supported by the specific language at issue here: the lease shall remain in force *"so long as* [Goldilocks] is not in default under the Lease." Since the tenant largely controls whether it is in default, Goldilocks effectively controls whether the lease should continue. That is, Goldilocks could have just ceased all rent payments and the lease presumably would have been extinguished. This interpretation is consistent with the above explanation of non-disturbance clauses as protecting a tenant's interests. Moreover, if we accept the district court and defendant's view that the non-disturbance clause is binding on both PNB and Goldilocks, then the attornment clause (*see infra* ) in the original leases would be superfluous.

### 2. The Attornment Clause

The district court did not discuss the attornment clause contained in the original leases. However, both sides agree that attornment clauses generally require a tenant to continue the existing lease under a new landlord after foreclosure, and that the attornment clause in the original leases was enforceable by PNB. *See Miscione v. Barton Dev. Co.,* 52 Cal.App.4th 1320, 61 Cal.Rptr.2d 280 (1997); *Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman,* 65 Cal.App.4th 1469, 77 Cal. Rptr.2d 479 (1998); Robert D. Feinstein & Sidney A. Keyles, *Foreclosure: Subordination, Non–Disturbance and Attornment Agreements,* 3 Probate & Property 38 (1989) ("[Under an attornment clause, t]he tenant covenants with the mortgagee that, in the event of foreclosure, the lease will not be extinguished but will continue as a lease between the mortgagee (or any successor to it) and the tenant."). The only disputed issue is whether PNB triggered the attornment.

Plaintiff argues that to enforce an attornment clause, the new landlord affirmatively must have given notice to the tenant *within a reasonable time* after the foreclosure that the tenant will continue to be obligated under its existing lease. Because the precise language of attornment clauses varies from contract to contract, we must look to the specific language of the attornment clause at issue to determine how attornment will operate in a particular case. *See Principal,* 65 Cal. App.4th at 1485, 77 Cal.Rptr.2d 479 ("[T]he terms of the attornment provision will govern how [attornment] is to occur and its effect on the existing lease."). If the clause contains a pre-condition, then the lender must fulfill the pre-condition to bind tenant. If no pre-condition exists in the attornment provision, then attornment operates automatically, and the existing lease continues to bind the tenant and the new landlord, absent contrary notice by the new landlord.

Here, the original leases' attornment clause indicate an automatic attornment upon foreclosure: "In the event any proceedings are brought for foreclosure ... the Tenant shall attorn to the purchaser upon any foreclosure or sale and recognize such purchaser as the Landlord under this Lease." Given the unqualified language, we find that the original leases survived foreclosure and Goldilocks remained obligated thereunder.

AFFIRMED.