[Civ. No. 4551. Third Appellate District.—May 26, 1932.]

T. A. PALLETT et al., Appellants, v. ROBERT B. PAL-
LETT et al., Respondents.

Rush & McCormick, Rush & Beirne, Jud R. Rush and William B. Beirne for Appellants.

Haas & Dunnigan, Walter F. Haas, H. C. Johnston, Gerald E. Kerrin and W. E. McClintock for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment favorable to the defendants, which was rendered in an equitable suit instituted by the heirs of the deceased father of the grantor of real property, to establish a resulting trust therein, and to declare the deed of conveyance therefor, to be a mere mortgage. The appellants assert that the evidence is insufficient to support the findings and decree, and that the decision is contrary to law.

The plaintiffs are heirs of George W. A. Pallett, deceased. T. A. Pallett and W. A. Pallett are the surviving sons of said deceased. The remaining plaintiffs are his grandchildren. The defendant, Robert B. Pallett is the son of the plaintiff, T. A. Pallett. The Pallett family migrated from Tennessee to California about the year 1857. After roaming about northern California for a period of several years, they settled on a 900-acre ranch in Los Angeles County in 1867, where they engaged in farming. Two of the daughters of George W. A. Pallett taught school. His sons and grandsons worked upon the ranch, or were employed by neighbors as farm hands. There is evidence of some trading in livestock. One of the sons acted as a deputy sheriff for a period of time. The nature of the avocations of the various members of the family indicates that their incomes did not greatly exceed their necessary expenditures. The record fails to disclose the amount of

money which was brought to California. There is no evidence of opulence in their manner of living or in the property which they possessed. It does not appear what amount of money they paid for the 900-acre ranch, or where they obtained the money with which it was purchased. This ranch was held in the names of George W. A. Pallett and his wife. Several years spent in roaming about northern California does not indicate they had the opportunity of acquiring any great amount of wealth. The evidence of the existence of a community family fund is very unsatisfactory. T. A. Pallett testified that the family worked as above related with common interest and contributed their excess earnings to a community family fund in charge of George W. A. Pallett for a period of some twenty-five years. It is asserted that several of the members of this pioneer family, headed by the patriarchal ancestor, George W. A. Pallett, who was then about eighty-five years of age, emigrated to Argentina in South America in 1900, with their accumulated wealth amounting to approximately $59,000. There is evidence that they engaged in farm speculations and the handling of livestock in that republic for a period of time. There is no satisfactory evidence that this enterprise prospered. George W. A. Pallett died in Argentina in 1901. His estate was never probated. There is some evidence of a partial distribution of the assets of his estate. In 1909, the Argentine boom collapsed, and the family returned to California. Some of the plaintiffs testified that about $48,000 was brought back from Argentina. In 1910, the McFadden ranch, consisting of 155 acres of land situated in Orange County, California, was purchased by T. A. Pallett. Part of this ranch was subsequently exchanged for the Shoemaker ranch, consisting of 291 acres of land situated in Los Angeles County. The additional sum of $4,000 was paid for the purchase of this place. One thousand dollars of this sum was paid with the check of T. A. Pallett. In 1912 this last-mentioned ranch was mortgaged by the purchaser to secure a loan of $5,000 from the Rivera State Bank. This money was applied upon the purchase price of the property.

Almost immediately after the purchase of the Shoemaker ranch, T. A. Pallett placed his son Robert Pallett in charge of the farm. Robert operated the place for several years.

As consideration for his services he received the entire proceeds from the ranch. He employed the farm help, paid the taxes, planted · an orchard and made certain other valuable improvements. None of the heirs of George W. A. Pallett ever claimed an interest in this property. Robert Pallett testified in that regard: "Q. Did any of the Pallett family, other than your father and mother, ever tell you that they claimed any interest in the property or that it was held other than under the ownership of your father and mother? A. No sir."

The indebtedness on this ranch which was incurred by T. A. Pallett was not paid. The mortgage was foreclosed by the bank. The ranch was about to be sold to satisfy the judgment. T. A. Pallett informed his son that he was unable to pay the indebtedness. Evidently there was then no community family fund to resort to in this emergency; at this critical time no conference of alleged interested parties was called, and no heir, except Robert, offered to save the ranch from foreclosure sale. It was agreed between T. A. Pallett and his son that the ranch should be deeded to Robert who would satisfy the debt, take the title to the property, and permit the grantor to repurchase the land at any time within the period of one year by paying the indebtedness, costs and expenses, together with a specified rate of interest thereon. Regarding this foreclosure and the agreement to reconvey the property to his father, the defendant testified: "I asked father what he had planned, and . . . he said he couldn't do anything, that he didn't have the money to do it with. So I told him if he would deed me the property so that I could use it as collateral to raise money, that Mr. Kauffmann would carry me at the bank and renew the papers or the mortgages, if I would pay up the indebtedness . . . I was to give him for this deed, as near as we could, the same privileges that he would have if it went to sheriff's sale. . . . And he said 'all right'."

Pursuant to this agreement the property was conveyed on April 6, 1916, by T. A. Pallett and his wife to Robert Pallett, by an absolute bargain and sale deed without restrictions. This deed was duly recorded by the grantee. The amount of the existing indebtedness on the ranch at the time of the conveyance to Robert, for which the mortgage was foreclosed, was the sum of $6,739.14. This sum was paid

by Robert Pallett by advancing $1739.14 in cash, and by executing a new mortgage on the property in favor of the bank to secure a loan of $5,000. In connection with this transaction Robert Pallett executed an unilateral agreement, on May 12, 1916, to reconvey the property to his father and mother upon payment to him of the sum of $1739.14 and the additional amount of the mortgage encumbrance of $5,000, together with costs, expenses and taxes with interest on these sums at the rate of eight per cent per annum. This instrument provides in part: "The sole consideration for this agreement is the blood relationship existing between said party of the first part and said parties of the second part. . . . Unless the payments hereinbefore specified, be paid, and the conditions hereinbefore set forth shall be fully performed, on or before the tenth day of April, 1917, there shall exist no covenant or obligation on the part of the first party to convey said property to said parties of the second part." The court found this document was signed by both parties to the challenged deed. This is not true. It was signed by Robert Pallett alone, and deposited with the bank. T. A. Pallett testified that he never saw it and would not have signed it if he had been asked to do so. The finding that this unilateral agreement was signed by both parties is immaterial, and may be disregarded. The recitations of this instrument merely corroborate the oral testimony of Robert Pallett. It is in accord with his statement to the effect that he promised to reconvey the property to his father at any time within the period of one year, upon repayment of the money expended on account of the purchase price thereof. These recitations amounted to substantially the same thing which he stated to his father when he said he should have "the same privileges that he would have if it went to sheriff's sale". Undoubtedly this statement referred to the privilege of the equity of one year which the law allows for redemption of the property from a foreclosure sale as provided by section 703 of the Code of Civil Procedure.

After obtaining title to the Shoemaker ranch, Robert Pallett continued to live on the premises and operate the farm as he had done for several years previously. He made further improvements, paid all taxes, costs and interest on the indebtedness. He conducted and paid for litigation by

means of which he acquired valuable water rights appurtenant to the property. He retained all proceeds and profits derived from the operation of the farm. Neither his father nor any of the other heirs of his grandfather ever claimed an interest in the proceeds of the ranch, or that the farm was to be held by Robert in trust. After securing title to the property, for a period of over seven years, no demand was made upon Robert Pallett to reconvey the property. Not until November 15, 1923, did T. A. Pallett suggest a reconveyance of the property. On that date he did say to his son Robert he would pay him $1800 to abandon the place. Assuming that this offer meant he would pay the sum of $1800 in addition to assuming the original $5,000 mortgage indebtedness, it is apparent this sum was insufficient to cover the purchase price, costs, taxes, expenses, interest and value of improvements which were paid for by Robert Pallett during the seven years in which he held title to the property. There is no evidence T. A. Pallett then had $1800, or that he was financially able to repurchase the ranch. The record indicates that he then was, and for many years had been impecunious. No money was tendered. The time for exercising the option to repurchase the ranch had long since expired. The offer of $1800 was unreasonable and unjust. The defendant refused to accept the proffer. This suit was commenced by the heirs of George W. A. Pallett to declare a resulting trust in the property and to construe the deed, which was executed to Robert Pallett, to be a mere mortgage. The court adopted findings adverse to the plaintiffs on all the essential issues.

█ We are of the opinion the evidence amply supports the findings that no community family funds belonging to the heirs of George W. A. Pallett were invested in the Shoemaker ranch by T. A. Pallett, and that no resulting trust exists therein. The evidence of the existence of a resulting trust in the present case falls far short of the clear and convincing proof thereof which is required by law. Having been the undisputed holder of the title to this property for many years, the presumption of law is that T. A. Pallett was the owner thereof, at the time he conveyed it to his son. This presumption was not overcome by the very unsatisfactory evidence of a community family fund. █ Moreover, the heirs of George W. A. Pallett could not hope

to procure the aid of a court of equity to reclaim this property without first reimbursing the defendants for the money expended in payment of the indebtedness incurred in saving the property from foreclosure sale and the cost of improvements acquired which greatly enhance the value of the property. No adequate tender of such reimbursements was pleaded or proved.

We are also of the opinion the evidence supports the findings to the effect that the defendants purchased the property in good faith without knowledge of the existence of an alleged trust on the part of the heirs, and that it was acquired for an adequate consideration, with an agreement to resell the property to T. A. Pallett within the period of one year, upon repayment of the purchase price therefor together with costs, taxes and interest; that this option to repurchase the property was not exercised pursuant to agreement and that all rights thereunder were forfeited.

In an action to construe a deed which is absolute in its terms to be a mere mortgage, the intention of the parties with respect to its effect is controlling. This intention, in the absence of an accompanying written document to the contrary, is manifested by the circumstances of the case, the conduct of the parties and any declarations of the parties which may throw light on this inquiry. In the present case, the assuming of the grantor's indebtedness by the grantee and the stipulation that the value of the land at that time was $25,000, supports the plaintiffs' claim that the instrument was intended to be a mere mortgage. On the contrary the fact that the grantees remained in exclusive possession and control of the farm, operating it at their own expense, making valuable improvements thereon, and appropriating the entire proceeds without opposition or claim of interest on the part of the grantee for a period of over seven years, strongly supports the defendants' claim that the property was purchased with the privilege of repurchasing it by the grantor within the period of one year from the execution of the deed.

While a careless stipulation of counsel was made in the course of the trial, that the property was worth $25,000 at the time of the conveyance, this fact appears to have been refuted by the grantor's admission that he did not have the means with which to save the property from foreclosure sale. It is improbable that the grantor would have

been unable to negotiate a new loan of $6,739.14 on property which was then reasonably worth $25,000. However, this stipulation appears to have been made, and it must stand for its face value.

The fact still remains that there is a substantial conflict of evidence regarding the intention of the parties respecting the nature and effect of the instrument of conveyance. Under such circumstances this court, on appeal, may not interfere with the discretion of the trial court in adopting findings upholding the theory of an absolute conveyance of title. As the court appropriately said in the case of *Farmer* v. *Grose*, 42 Cal. 169, at 173:

"It is not our province to weigh these conflicting statements; and the court below, which heard the witnesses, having decided in favor of the plaintiff, we would not be justified in setting aside its judgment on the ground that it was against the weight of the evidence, even though we might be inclined to the opinion that the preponderance of proof was on the other side."

Courts of equity are loath to hold that a deed of conveyance which is absolute in its terms is a mere mortgage, unless satisfactory and convincing evidence to that effect is adduced. The policy of the law is wisely and firmly settled that "a deed affords a very high order of proof tending to show that the intention (of a grantor) is to convey a full title". (17 Cal. Jur. 755, sec. 56.) The burden is on the grantor who seeks to construe an absolute deed of conveyance into a mere mortgage, to prove that this was the intention of the parties by very clear, satisfactory and convincing testimony. (17 Cal. Jur. 756, sec. 58.) This rule is supported by a host of authorities.

In the present case we are unable to say the grantor has sustained the burden of proof required by law, or that the trial court abused its discretion in determining that the deed of conveyance was intended to be exactly what it purports to have been, namely, an absolute grant, bargain and sale deed.

The judgment is affirmed.

Preston, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 25, 1932.