[Civ. No. 5273.   Third Appellate District.—May 11, 1935.]

MERCHANTS HOLDING CORPORATION, LTD., Respondent, v. LINA ELISE GREY, Appellant.

Stick & Moerdyke for Appellant.

Freston & Files and Ralph E. Lewis for Respondent.

PAULSEN, J., *pro tem.*—Defendant Grey appeals from a judgment rendered against her and Henry Ramey in an action to recover a deficiency after sale under a deed of trust.

Prior to August 20, 1929, Mrs. O. A. Ramey, the mother of Henry Ramey, owned two contiguous lots in Altadena described as lots 11 and 12 of tract 1627. An expensive, reinforced concrete house had been constructed on each lot, and on each house and lot was an encumbrance for $20,000. The two lots were somewhat small for large houses and in order to make their property conform to the standards desired in the locality and also to secure some relief from the burden of debt, the Rameys conceived the idea of disposing of one of the houses and reserving both lots for the remaining house. In July, 1929, Henry Ramey telephoned to appellant who owned vacant lots near by, and suggested a plan for the removal of one of the houses to one of her lots. She referred him to Edwin G. Bowen ''as her agent and representative who had charge of her property''. After extended negotiations with Bowen, an agreement was reached, according to Ramey, by which the house on lot 11 was to be removed to appellant's lot and Ramey was then to obtain a new loan for $20,000 secured by a trust deed thereto to replace the encumbrances theretofore on the house and said lot 11. After this was done, Ramey was to reconvey the house and lot to appellant who was to assume payment of the indebtedness. She was then to give Ramey an option to repurchase for $40,000.

In furtherance of this plan, Ramey and Bowen called at appellant's home. Ramey did not see her at that time but she conferred with Bowen in a separate room where she prepared and signed a deed from herself to Ramey and also filled out in her own handwriting a deed form for the reconveyance from

Ramey and his wife. After writing in the description she drew a diagonal line through the remaining blank space of the form. When an acknowledgment certificate had been attached to appellant's deed, the two papers were handed by Bowen to Ramey. Ramey thereafter obtained a new loan for $20,000 secured by a trust deed on this property. He then had his wife sign the form prepared by appellant and took it to Bowen's office. Before he signed it himself he called Bowen's attention to the fact that appellant had "forgotten" to include an assumption clause in the form and thereupon, in Bowen's presence, he erased a part of the diagonal line drawn by appellant and inserted, immediately after the description, the following words: "Subject to trust deed in amount Twenty thousand Dollars ($20,000.00) which grantee assumes and agrees to pay." He then signed and acknowledged it and delivered it to Bowen who placed it in his safe. An option to repurchase was then given to Ramey. The deed was delivered to Bowen on August 20, 1929, and remained either in the hands of Bowen or appellant until January 13, 1930, when appellant had it recorded. On January 15, 1930, appellant conveyed the property to Edwin G. Bowen Company. On November 6, 1930, the then holder of the note wrote appellant requesting payment but she denied any knowledge of the existence of the assumption clause and attempted to repudiate the whole transaction. By the terms of the note no interest or principal had become payable prior to this time and nothing had been paid by either Ramey or appellant.

Appellant disputes some of the facts stated above but they are all established by abundant evidence and notwithstanding the conflict the trial court accepted them as true.

■ Appellant insists that she had no intention of assuming the debt and that she never promised to pay it. A formal promise was not necessary to render her personally liable. Such an "obligation may be made orally or in a separate instrument; it may be implied from the transaction of the parties, or it may be shown by the circumstances under which the purchase was made, as well as by the language used in the agreement". (*Hopkins* v. *Warner*, 109 Cal. 133 [41 Pac. 868]; *Dutton* v. *Locke-Paddon*, 37 Cal. App. 693 [174 Pac. 674]; *Lick* v. *Anderson*, 29 Cal. App. 491 [156 Pac. 70].) "The doctrine results from the familiar doctrine in equity that a creditor is entitled to the benefit of all securities or

collateral obligations that the principal debtor may have given to the surety for the payment of the debt. By the conveyance of the mortgaged premises and the assumption of the mortgage debt by the grantee, the latter, as between him and his grantor, becomes primarily liable to the mortgagee, and his vendor becomes his surety." (*Hopkins* v. *Warner, supra; Williams* v. *Naftzger*, 103 Cal. 438 [37 Pac. 411].)

■ Appellant contends that whatever agreement may have been reached by Ramey and Bowen, the real agreement, as she accepted it, was set forth in the deed form she prepared herself and that neither Ramey nor Bowen had authority to alter it. In her opening brief she propounds the following question: "Has a general agent, without the knowledge or consent of his principal, authority to consent to the alteration of a deed by inserting a clause therein assuming and agreeing to pay a trust deed, and by accepting the deed thus altered, to bind his principal to such assumption?"

No deed was altered by Ramey. At the time the paper was filled out by appellant it was nothing more than a blank form which the grantor could change in any manner he saw fit until the time of delivery. (*Dutton* v. *Locke-Paddon, supra.*) The document as finally delivered to Bowen was Ramey's deed, not appellant's, and until he signed and delivered it he had the right to alter it at will. Nor is there any question here as to the authority of an agent to consent to the alteration of a deed. The deed did not come into existence, as such, until delivery, and there was no alteration thereafter. Appellant argues, however, that she intended the agreement to be as set forth in the papers prepared by her and that Bowen could not consent to the alteration of such agreement. This assumes that she alone could make an agreement. If there was no meeting of minds at this time on the question of assuming the debt, then there was no agreement at this time to be altered. Moreover, the circumstances attending the preparation of the papers by appellant and her version of the transaction were not conclusive evidence of the terms of the agreement. These were simply facts to be considered in connection with all the other facts in the case to determine what kind of an agreement, if any, had been finally reached.

It is next contended that the contract was one coming within the statute of frauds and that as Bowen had no written authority to consummate a contract appellant was not bound by his acts. In the view we take of the case it is unnecessary

to consider the application of the statute of frauds to the making of the preliminary agreement. Under the rule stated above that such an obligation may be implied from the transaction of the parties or may be shown by the circumstances under which the purchase is made, the trial court evidently believed that appellant did intend originally to assume the debt as part of the consideration for the house and that her failure to insert the assumption clause in the form was due either to an oversight or to ignorance of such procedure. However, the judgment rests upon other grounds. The court found that the deed from Ramey, with the assumption clause therein, "was delivered to the defendant, Lina Elise Grey, by delivering the same to her duly authorized agent and representative, Edwin G. Bowen, and accepted by her in the form and manner as the same had been executed". █ A grantee who, with knowledge of its contents, accepts a conveyance which requires him to assume the payment of an existing mortgage becomes personally liable therefor. (*Lick* v. *Anderson, supra; Daniels* v. *Johnson,* 129 Cal. 415 [61 Pac. 1107, 79 Am. St. Rep. 123] ; *Tulare County Bank* v. *Madden,* 109 Cal. 312 [41 Pac. 1092].) The delivery of the deed to an agent who was acting within the scope of his authority and who had knowledge of the assumption clause, the retention of the deed for many months, the recording of it and later the conveyance of the property to a third party, afford ample support to the finding of acceptance. █ Even if Bowen had no authority to consummate the agreement, there was abundant evidence to prove his authority to negotiate with Ramey and to accept physical delivery of documents and proposals for transmission to appellant. Both by word and conduct appellant represented to Ramey that Bowen possessed such power and she is now estopped to deny it. (*Hovley* v. *Frank Meline Co.,* 83 Cal. App. 441 [257 Pac. 112] ; *Henry Cowell Co.* v. *Santa Cruz County Nat. Bank,* 82 Cal. App. 519 [255 Pac. 881] ; *Sauble* v. *Gary S. C. Agency,* 56 Cal. App. 606 [206 Pac. 141] ; *Robinson* v. *American Fish etc. Co.,* 17 Cal. App. 212 [119 Pac. 388].) █ Bowen was acting strictly within the scope of his authority, he knew the contents of the deed, and it was his duty to transmit this information to appellant if she did not already have it. His knowledge became the knowledge of his principal. (*Shamlian* v. *Wells,* 197 Cal. 716 [242 Pac. 483] ; *Bogart* v. *George K. Porter Co.,* 193 Cal. 197 [223 Pac. 959, 31 A. L. R. 1045] ;

*Wittenbrock* v. *Parker*, 102 Cal. 93 [36 Pac. 374, 41 Am. St. Rep. 172, 24 L. R. A. 197].) By recording the deed and later conveying the property she accepted the assumption clause and rendered herself liable for the debt.

Appellant has cited a number of authorities holding that the mere recording of such a deed does not constitute acceptance, but an examination of them shows that in each case the grantee had no knowledge of the existence of such clause at the time of recordation. She relies particularly upon *Proctor Trust Co.* v. *Neihart*, 130 Kan. 698 [288 Pac. 574], in which the Supreme Court of Kansas held that a delivery to and recording by an agent did not bind his principal. But this case can be distinguished readily from the instant case. It was conclusively shown there that a written agreement, with no provision for assumption of the mortgage, had preceded the execution of the deed; that the clause was inserted without the agent's knowledge and contrary to the terms of the written contract and that he was not aware of it when he had it recorded.

The trial court found that appellant "entered into an agreement with Henry Ramey for the purchase" of the house. It is now contended that the transaction was not a sale (1) because appellant paid no purchase price; and (2) because the deed and option, under all the circumstances, constituted a mortgage.

Conceding, without deciding, that such a finding was essential to support the judgment, we see no merit in these contentions. Ramey testified that the $40,000 price to him was based upon the value of appellant's lot, which was worth between $10,000 and $11,000, plus the amount appellant was to pay for moving the house, that is, $5,292, plus the sum of $500, which she was to invest in landscaping the property, plus a commission of $2,500 or $2,600 to Bowen, and plus the amount of $20,000 and interest to accrue, secured by the trust deed. It is apparent that the price of $40,000 was about the amount appellant had paid out, added to the value of her lot. An appraiser testified that the house was worth $22,400 on August 20, 1929. It is a fair and logical inference from these facts, when considered with the other testimony of Ramey, that appellant purchased the house for $20,000 by assuming the indebtedness for that amount.

Whether a deed absolute on its face is a mortgage is a question of the intention of the parties to the transaction,

and the question of intention is one of fact to be determined by the trial court. The presumption is that such a deed is what it purports to be and one who seeks to overcome such presumption has the burden of producing clear and convincing proof. (*Boal* v. *Gassen,* 178 Cal. 132 [172 Pac. 588]; *Peninsular etc. Co.* v. *Pacific S. W. Co.,* 123 Cal. 689 [56 Pac. 604]; *Vance* v. *Anderson,* 113 Cal. 532 [45 Pac. 816]; *Pallett* v. *Pallett,* 123 Cal. App. 701 [11 Pac. (2d) 898]; *Reynolds* v. *Hook,* 109 Cal. App. 226 [292 Pac. 1000]; *Stevens* v. *Fetterman,* 76 Cal. App. 741 [246 Pac. 102].)

■ Appellant quotes from *In re Cutting,* 17 Cal. App. 604 [121 Pac. 304], as follows: "It is settled law that a sale is an agreement by which one of two contracting parties . . . gives a thing and passes title in exchange for a certain price in current money," etc., and argues that as no money passed to Ramey there could not have been a sale. The Supreme Court has held that the term "sale" does not necessarily mean a transfer for money only and that the word frequently has a broader meaning. (*W. F. Boardman Co.* v. *Petch,* 186 Cal. 476 [199 Pac. 1047]; *Mansfield* v. *District etc. Assn.,* 154 Cal. 145 [97 Pac. 150].) The agreement to assume and pay the debt of $20,000 as a consideration for the house is entirely consistent with the idea of a sale.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 8, 1935.