FILED

APR 3 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ALEX A. KHADAVI,<br><div align="right">Debtor.</div> | BAP No. CC-22-1205-SCL |
| | Bk. No. 2:21-bk-14449-BB |
| GREEN COIN,<br><div align="right">Appellant,</div><br>v.<br>ALEX A. KHADAVI; JASON M. RUND,<br>Chapter 7 Trustee,<br><div align="right">Appellees.</div> | Adv. No. 2:21-ap-01262-BB<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Sheri Bluebond, Bankruptcy Judge, Presiding

Before: SPRAKER, CORBIT, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellant Green Coin challenges the bankruptcy court's summary judgment declaring that its $900,000 deposit in furtherance of a sale that never closed is property of the chapter 7[1] bankruptcy estate administered

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules

by appellee Jason Rund, trustee. The bankruptcy court held, pursuant to the purchase agreement it had approved, that the estate was entitled to retain the deposit because Green Coin had defaulted. The bankruptcy court also determined that debtor never relinquished the estate's rights under the purchase agreement. Because we discern no error, we AFFIRM.

<div align="center">

**FACTS[2]**

</div>

**A.    The debtor files bankruptcy and moves to sell real property to Green Coin.**

The debtor, Alex Khadavi, is a dermatologist and facial surgeon who practices in Southern California. Green Coin is a cryptocurrency company allegedly owned by a man commonly known as Mr. Pink.[3]

In May 2021, Khadavi commenced his bankruptcy case by filing a chapter 11 petition. Khadavi's assets included a single-family residence he owned as an investment property on Sarbonne Road in Los Angeles ("Property"). He valued the Property at $80 million. But he also scheduled numerous deeds of trust and liens against the Property totaling over $31 million.

---

of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] Although nothing in the record definitively identifies the full name of Mr. Pink, the public records filings of which we can take judicial notice suggest he is Pink Qiuying Wang Suo.

On September 23, 2021, Khadavi moved for authority to sell the Property for $85 million to Green Coin. He attached to the sale motion a copy of the purchase agreement ("Purchase Agreement"), which consisted of an offer to purchase the Property set forth on a form California Residential Purchase Agreement and Joint Escrow Instructions dated August 18, 2021, and a form Seller Counter Offer No. 1 dated September 8, 2021. Khadavi stated that Green Coin accepted his counter offer on September 9, 2021. In relevant part, the counter offer required Green Coin to pay a deposit of 3% of the purchase price, or $2.55 million. The motion further advised that Green Coin had deposited into escrow $900,000 of the $2.55 million deposit. The motion also specified that the Purchase Agreement was "subject to court approval" but was not contingent on an appraisal of the property. Additionally, Khadavi was selling the Property "as is, where is" with no representations or warranties. Of particular importance to this appeal, paragraph 21B of the Purchase Agreement included a liquidated damages clause entitling the seller to keep the deposit as liquidated damages in the event of a default by buyer ("Liquidated Damages Clause").

Khadavi served the sale motion on two real estate agents who were representing Green Coin as the Buyer in the Purchase Agreement: (1) George Kahwaji of Platinum Triangle Group Rodeo Realty Fine Estates; and (2) Brianna Bebd of Keller Williams. But Green Coin did not participate in the bankruptcy court sale proceedings. Nor did either real estate agent

3

appear for the sale hearing held on October 14, 2021. At the sale hearing the court focused on the mechanics of the sale, timing issues, and procedures for holding and eventually distributing the sale proceeds, but it did ask whether Green Coin had paid the full deposit. Counsel for Khadavi advised the court that it had not, that it was a matter of grave concern, and that he had heard "a variety of stories about how it's not just the rest of the deposit but all the money that will be deposited." Counsel further advised the court that if the sale did not close within a month, "then it's never going to close."

On November 16, 2021, the bankruptcy court entered an order approving the sale. The sale order specified that Khadavi "shall sell" and Green Coin "shall buy" the Property in accordance with the terms and conditions of the Purchase Agreement attached to the sale motion as Exhibit 1.

**B.     Khadavi and Green Coin execute additional agreements that are not noticed or presented for court approval.**

The Purchase Agreement contained a section, paragraph 5, for identifying and incorporating any addenda to the agreement. That section was left blank by the parties, indicating that there were no addenda. Though absent from the Purchase Agreement and not mentioned in Khadavi's sale motion, Green Coin contends that there were three addenda that changed the terms of the sale presented to the court.

Green Coin claims that its purchase of the Property was contingent

4

on a valuation of Green Coin of no less than the $85 million sale price for the Property. According to Green Coin, this contingency was stated in Addendum No. 1 to its August 18, 2021 purchase offer. Mr. Pink, Green Coin's principal, says he signed the Purchase Agreement and Addendum No. 1 with the understanding that any deposit Green Coin paid would be fully refundable if the sale did not close for any reason. But the Purchase Agreement did not say this.

Mr. Pink contends that Khadavi, acting on the advice of counsel, insisted that they conceal the conditional nature of the sale from the court. As Mr. Pink later alleged in the subsequent adversary proceeding, he was tricked into executing a form Contingency Removal No. 1 dated September 26, 2021, stating that all buyer contingencies had been removed from the Purchase Agreement. As he recounts it, Khadavi and his counsel told him that formal removal of the contingencies was necessary to move forward with the court proceedings, but they both reassured him that his deposit would be fully refundable if escrow did not close.

In Green Coin's version of events, it signed two more addenda after the sale hearing but before the sale order was signed. The first of these, Addendum No. 2 dated October 25, 2021, extended the deadline for paying the remainder of the deposit to November 2, 2021, and extended the sale closing date to November 25, 2021. The second, Addendum No. 3 dated November 12, 2021, further extended the deadline for paying the remainder of the deposit to December 2, 2021. Addendum No. 3 also

extended the sale closing date, this time to January 15, 2022. Both addenda purported to render the deposit fully refundable if Green Coin failed to close escrow, notwithstanding the Liquidated Damages Clause, which indicated otherwise.

None of the three addenda were disclosed or provided to the bankruptcy court before it entered the order approving the sale.

**C. The debtor commences an adversary proceeding after Green Coin fails to pay the remainder of the earnest money deposit.**

On December 1, 2021, Khadavi sent Green Coin a Notice to Buyer to Perform No. 1. The Notice directed Green Coin to perform its contractual obligation to remit the balance of the 3% deposit into escrow. Green Coin never paid the remaining portion of the $2.55 million deposit or the purchase price for the Property. Instead, Green Coin claims that it and Khadavi mutually agreed to cancel the Purchase Agreement. Alternately, Green Coin claims that Khadavi unilaterally cancelled the Purchase Agreement before it defaulted.

The parties dispute the specifics of the alleged cancellation. But the contemporaneous documentation between the parties reflects that Khadavi and Green Coin mutually agreed on December 10, 2021, that the Purchase Agreement would be deemed cancelled. Khadavi and Green Coin executed a California form—Cancellation of Contract, Release of Deposit and Cancellation of Escrow (the, "Cancellation Form"). Two versions of the Cancellation Form were presented in the adversary proceeding. Both

versions were signed by Khadavi and Green Coin on December 10, 2021, though Khadavi's signature is missing in Section 1 of the Cancellation Form in Green Coin's version. Khadavi's Cancellation Form includes signatures for both parties in all required areas. Section 1 of the document is entitled Cancellation of Contract and provides six choices for the buyer or seller to select the basis for cancellation of the sale. Khadavi and Green Coin selected "[p]er mutual agreement."

The Cancellation Form also addressed the release of any deposit and cancellation of escrow by providing various options for the buyer and seller to select. In both of their versions, Khadavi and Green Coin selected "Other," and wrote "See Addendum #3." The main difference between the two versions of the Cancellation Form concerns the attachment identified as Addendum #3. Green Coin's version includes an official form Addendum that states, "Buyer to release $200,000 to Seller. Buyer and Seller agree this satisfies any and all liquidated damages. $700,000 US Dollars will be returned to the buyer Green Coin." This page is signed by Green Coin but not by Khadavi. Additionally, Green Coin's version includes another page titled, "777 Sarbonne Agreement between Green Coin and Alex Khadavi." This document stated that Green Coin would release $200,000 of the escrow deposit to Khadavi while the remaining $700,000 would be returned to Green Coin. Both Khadavi and Green Coin signed this page on December 10, 2021. Khadavi's version omits the official addendum page but includes a separate page requiring Green Coin to

7

release $200,000 from the escrow deposit to Khadavi while the remaining $700,000 of the earnest money would be held in escrow pending future litigation. This page was also signed by both Khadavi and Green Coin on December 10, 2021.

Khadavi did not receive the $200,000 from the earnest money deposit being held in escrow. Consistent with the court's scheduling deadlines and instructions given at a sale status conference held on December 1, 2021, Khadavi then sued Green Coin in the bankruptcy court seeking declaratory relief that he was entitled to the entire $900,000 held in escrow. In its answer to the complaint, Green Coin alleged that its $900,000 deposit always was fully refundable. It alternately argued that in December 2021, it and Khadavi mutually agreed to cancel their sale agreement.

**D     The court grants summary judgment in the adversary proceeding.**

Apprised of these allegations during a status conference in the adversary proceeding, the court issued an order to show cause why a chapter 11 trustee should not be appointed. On April 14, 2022, the court directed the United States Trustee to appoint a chapter 11 trustee for Khadavi's bankruptcy estate. Ultimately, in July 2022, the case was converted to chapter 7. Jason Rund has served as both the chapter 11 trustee and the chapter 7 trustee of Khadavi's bankruptcy estate.

Rund moved for summary judgment in the adversary proceeding. He asserted that the plain language of the Purchase Agreement, along with Green Coin's written release of all contingencies, compelled judgment

awarding the estate the $900,000 deposit as liquidated damages for Green Coin's breach of the Purchase Agreement. Rund further argued that even if Addenda 1-3 or either of the conflicting versions of the December 10, 2021 Cancellation Form were authentic and actually executed by Khadavi, they were invalid because the bankruptcy court had not approved them.

In its opposition to the summary judgment motion, Green Coin contended that there were several disputed issues of material fact that prevented entry of summary judgment. These included: (1) whether and when the seller's contingency of "court approval" was satisfied; (2) the deadline for Green Coin to close escrow; (3) which event or events (if any) qualified as a default triggering the liquidated damages clause; (4) whether Khadavi's admission that he "mutually cancelled" the Purchase Agreement triggered paragraphs 14D(2) and 14H of the Purchase Agreement requiring refund of the deposit; and (5) the validity of Addenda Nos. 2 and 3, notwithstanding Khadavi's concealment of them from the court.[4] Green Coin further argued that the liquidated damages clause was unreasonable and unenforceable.[5]

In reply, Rund maintained that any purported agreement to cancel the Purchase Agreement was invalid because the bankruptcy court did not

---

[4] Whereas Green Coin characterizes these as questions of fact, they actually are issues of bankruptcy law, contract law, and contract interpretation that do not require resolution of any genuinely disputed issue of material fact.

[5] Green Coin has abandoned this argument on appeal. It is not addressed in its opening brief.

approve it. Rund reasoned that any cancellation of the Purchase Agreement was tantamount to a compromise of a dispute governed by Rule 9019 that required notice and court approval.

As for Green Coin's arguments questioning whether and when a default occurred, Rund relied on the terms of the Purchase Agreement as approved by the court. He argued that under the ordinary meaning of the term "default," Green Coin had defaulted because it failed to pay the full purchase price into escrow as required under the Purchase Agreement's plain language within 28 days of acceptance of the Purchase Agreement. Rund further contended that the liquidated damages clause was both reasonable and enforceable.

At the first hearing on the summary judgment motion, the bankruptcy court granted the motion in part and reserved the remainder for further consideration. The court held that the Purchase Agreement did not include any of the addenda Green Coin subsequently presented because none of them were proffered at the time the bankruptcy court considered and granted the sale motion. As the court reasoned, if Green Coin thought the addenda were part of the Purchase Agreement, it was incumbent on it to advise the court in response to the sale motion. The court ruled that Green Coin had actual or constructive notice of the contents of the sale motion because both of its real estate agents received service copies of the motion at the time it was filed. The agents also received notice of the initial sale hearing date. Accordingly, the court

10

concluded that the Purchase Agreement was not contingent upon any valuation of Green Coin, nor was the deposit refundable. The court also rejected Green Coin's liquidated damages argument, holding that under the circumstances the $900,000 deposited was a reasonable amount of liquidated damages.

The court declined to decide which of the various versions of the December 10, 2021 cancellation agreement was controlling. Rather, it held that any agreement to dispose of the escrow deposit was invalid. It reasoned that each of the agreements constituted a compromise under Rule 9019 that required prior notice and court approval to become effective. Alternately, the court reasoned they constituted an improper attempt at abandonment of an estate asset without court approval.

As for the buyer's default, the court held that Green Coin had unequivocally defaulted because it was uncontroverted that it never paid the balance of the deposit. The court noted that this was true whether measured by the time specified in the Purchase Agreement or within three days of Khadavi's December 1, 2021 written notice to buyer to perform. The court also ordered supplemental briefing on whether Khadavi had cancelled the Purchase Agreement and if so, whether prior court approval was required.

After further briefing the court held that Khadavi had not cancelled the Purchase Agreement under paragraph 14(D), which was the only Purchase Agreement provision that might have entitled Green Coin to a

11

refund of its deposit. The court further ruled that even if he had attempted to do so, this attempt was invalid absent prior notice and court approval either as an abandonment of estate property under § 554 or as a compromise under Rule 9019.

The bankruptcy court entered summary judgment in favor of Rund on September 28, 2022. Green Coin timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred when it granted summary judgment in favor of Rund.

## STANDARD OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. *Boyajian v. New Falls Corp. (In re Boyajian),* 564 F.3d 1088, 1090 (9th Cir. 2009). When we review a matter de novo, we give no deference to the bankruptcy court's decision. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

A.  **Summary judgment.**

Civil Rule 56(a) is made applicable in adversary proceedings by Rule 7056. Under this rule, courts grant summary judgment when the record demonstrates "that there is no genuine issue as to any material fact and

12

that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only genuine disputes of material fact will preclude summary judgment. *See id.* at 322-23. "An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). A fact is "material" if it may affect the outcome of the case under the substantive law. *Anderson*, 477 U.S. at 248.

In assessing the merits of a summary judgment motion, all facts genuinely in dispute must be viewed and all reasonable inferences must be made, "in the light most favorable to the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, when the nonmovant's uncorroborated declaration testimony is conclusively refuted by other evidence in the record, the nonmovant has not demonstrated a genuine issue of material fact that requires denial of summary judgment. *Id.* at 379-81.

**B.    Rules of contract construction.**

Because the rules of contract interpretation address many of Green Coin's arguments, we offer a brief recitation of relevant contract interpretation rules. Under California law, real property sales contracts are interpreted in the same manner as other contracts. *See Ram's Gate Winery, LLC v. Roche*, 235 Cal. App. 4th 1071, 1082 (2015) (stating in the context of a dispute over a real property sale that the court would ascertain the contracting parties' intent "in the same manner as in the case of any other

13

contract."); *see also* Cal. Civ. Code § 1635 ("All contracts, whether public or private, are to be interpreted by the same rules, except as otherwise provided by this Code.").

"California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) (cleaned up). In other words, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. Furthermore, "[w]hen a contract is reduced to writing, this intent 'is to be ascertained from the writing alone, if possible.'" *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002) (citing Cal. Civ. Code § 1639; and *Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550, 559, (1999)).

When the contract language is unambiguous or the relevant extrinsic evidence is undisputed, the court's interpretation of the contract is a question of law. *L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989); *see also Founding Members of the Newport Beach Country Club*, 109 Cal. App. 4th at 955-56 ("When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the

14

appellate court independently construes the contract.").

## C.     Green Coin defaulted on the Purchase Agreement.

This appeal hinges on a single sentence from the Liquidated Damages Clause: "If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid." The bankruptcy court applied the Liquidated Damages Clause to hold that the estate was entitled to the $900,000 deposit. It determined that Green Coin defaulted by failing to pay the full deposit at or before the time it was due, and this resulted in Green Coin not being able to complete the purchase.

Green Coin's relevant arguments challenge the bankruptcy court's application of the Liquidated Damages Clause. Though Green Coin never paid the full deposit as required under the Purchase Agreement, it claims that it never defaulted before cancellation of the contract. It asserts that its duty to perform never matured because notice of various events was a condition to its performance. It next contends the parties agreed that the deposit under any and all circumstances was fully refundable, thereby negating the Liquidated Damages Clause. Alternately, it insists that by the time its performance was due, Khadavi had cancelled the contract. Finally, it argues that regardless of any default that occurred, Khadavi elected to proceed and did proceed under paragraph 14D of the Purchase Agreement, which provides for return of the deposit to the prospective purchaser upon cancellation. As discussed below, none of Green Coin's theories justify

15

reversal.[6]

### 1.    The due date of the deposit.

As the bankruptcy court duly recognized, the plain language of the Purchase Agreement required the buyer to pay the full deposit amount "within 3 business days after Acceptance." In turn, the Purchase Agreement specifically defined "Acceptance" as "the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer." It is undisputed that "Acceptance" occurred here on September 9, 2021, when Green Coin executed and returned the counter offer to Khadavi. Thus, the full $2.55 million deposit was due on September 12, 2021 (or the next business day thereafter).

Evidently aware of this deadline, the parties negotiated for two Purchase Agreement addenda, which extended the due date for the

---

[6] In addition to its other arguments, Green Coin contends that its failure to timely pay the full deposit as the Purchase Agreement required did not constitute a default under the agreement. Though it acknowledges that the Purchase Agreement did not define the term "default," Green Coin makes no attempt to define the word—other than to baldly assert that its nonpayment of the deposit would not fall within the definition. This assertion lacks merit. Ordinarily, "words of a contract are to be understood in their ordinary and popular sense," unless the surrounding circumstances indicate otherwise. Cal. Civ. Code § 1644; *accord*, *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 822 (1990). "Default" commonly means "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." Black's Law Dictionary (11th ed. 2019). As discussed below, the Purchase Agreement required Green Coin to pay the deposit, and it defaulted by not timely paying the full deposit amount required.

deposit. Addendum No. 2 extended the deposit deadline to November 2, 2021, and Addendum No. 3 further extended the deposit deadline to December 2, 2021. There are disputes regarding the execution of these addenda and whether they are valid in the absence of court approval. These disputes are not material. Consistent with the bankruptcy court's decision, we assume for purposes of summary judgment that the addenda duly extended the deposit deadline.

This means that, at the latest, Green Coin's full deposit was due no later than December 2, 2021. Therefore, Green Coin was in default under the Purchase Agreement as of December 3, 2021, when it failed to pay the full amount of the required deposit. By that date even the contingency handwritten into the Purchase Agreement at paragraph 6—"Subject to Court Approval"—had been satisfied. The bankruptcy court had entered its order authorizing the sale on November 16, 2021.

Green Coin argues that the Notice of Buyer to Perform No. 1 ("NBP") Khadavi executed and sent to Green Coin on December 1, 2021, constituted a further extension of the deposit deadline. Green Coin suggests that the NBP extended the deposit deadline to December 6, 2021. It is mistaken. The NBP identifies full payment of the "Initial Deposit" as a required "contractual action" and then specifies that the buyer has three days from delivery of the NBP to perform or else "Seller **may** cancel the Agreement." (Emphasis added.) It is beyond genuine dispute that the performance period given in the NBP was to cure an existing default. Such a reading is

17

compelled by Purchase Agreement paragraphs 3A (governing the deposit) and 14D (governing buyer rescission). In relevant part, paragraph 14D(2) **permits** the seller to rescind and return the portion of deposit paid "after first delivering to Buyer a NBP" if the full deposit is not paid in accordance with paragraph 3A. Because Khadavi gave the NBP to permit Green Coin to cure its failure to fund the full deposit, the NBP does not alter the uncontroverted fact that Green Coin already was in default as of December 3, 2021.

### 2. Alleged notice conditions.

Green Coin next claims that its failure to pay the full deposit did not constitute a default because its duty to pay the full deposit amount never matured. It broadly complains that it was not aware of what specifically occurred in the bankruptcy court. This was largely a self-inflicted wound. Yet, Green Coin insists that before the full earnest money deposit was due, Khadavi was required to give it notice: (1) of the bankruptcy court's order approving the contract; (2) that it might forfeit the $900,000 deposit paid if it did not pay the remainder of the deposit; and (3) that it was obliged to perform this duty by a date certain.

We have found no per se rule that such notice is a compulsory condition precedent to performance under a contract. To the contrary, unless the parties agree to a notice condition or one of the parties persuades the court that the notice condition is implicit in the contract or is necessary as a matter of good faith and fair dealing, no such condition

18

exists. See Restatement (Second) of Contracts § 226, cmts. a & c, and illus. 7 & 8 (1981); *see also JMR Constr. Corp. v. Env't Assessment & Remediation Mgmt., Inc.*, 243 Cal. App. 4th 571, 596 (2015), *as modified on denial of reh'g* (Jan. 28, 2016) (holding that under California's rules of contract construction, obligee under surety contract was not required to give notice to surety of principal's default as a condition precedent to surety's liability on performance bonds).

If Green Coin wanted to require notice of court approval, potential forfeiture, and the specific timing of its performance as contractual provisions, it could have proposed putting them in the parties' Purchase Agreement. But it did not do so. Nor has Green Coin presented any authority supporting the notion that the conditions should have been implied as a matter of law. We see nothing unfair, unreasonable, or impractical in the absence of these notice conditions.

Importantly, the bankruptcy court noted that Green Coin's real estate agents were timely served with the sale motion and notice of the sale hearing. As the bankruptcy court's decision correctly reflects, their knowledge is imputed to Green Coin.[7] The real estate agents knew the

---

[7] Green Coin's real estate sales agents had a fiduciary duty to report to their respective brokers all information that they knew or should have known in the course and scope of their agency, and their brokers had an equivalent fiduciary duty to report the same information to Green Coin as the prospective buyer. *See Horiike v. Coldwell Banker Residential Brokerage Co.*, 1 Cal. 5th 1024, 1038-39 (2016). As a result, all knowledge Green Coin's real estate agents and brokers acquired or reasonably should have learned in the course and scope of their duties is imputed to Green Coin. *See* 4

name and number of the bankruptcy case and that Khadavi was seeking court approval of the sale. They also knew the contents of the sale motion, the transaction documents attached, and the date and time of the hearing on the motion. Thus, it would have been simple and easy for Green Coin's agents to track the court's approval process for an $85 million sale. Additionally, Green Coin's agents were in repeated contact with Khadavi and his bankruptcy counsel about the sale. Indeed, Green Coin and its agents negotiated for extensions of the due date. Thus, Green Coin's professed ignorance of the specific due date and the claimed unfairness of not being told the specific due date rings hollow and fails to raise a genuine dispute of material fact to preclude summary judgment.

Green Coin's argument that it was unaware that its partial deposit was subject to potential forfeiture is equally unavailing. As the bankruptcy court found, the Liquidated Damages Clause clearly provides for liquidated damages if Green Coin defaulted. Also, Green Coin's repeated efforts to amend the Purchase Agreement to make the deposit refundable demonstrate its knowledge that it was subject to forfeiture if it defaulted.

Accordingly, we reject Green Coin's argument that conditions of notice regarding court approval, potential forfeiture, and the specific timing of its performance were part of, or should be implied into, the parties' contract.

---

Miller and Starr, *Cal. Real Est.* § 10:79 & n.6 (4th ed. 2023) (citing *Merchants' Holding Corp. v. Grey*, 6 Cal. App. 2d 682, 687-88 (1935)).

### 3. Alleged refundability of the $900,000 deposited.

Green Coin next contends that regardless of default, the deposit was fully refundable if the sale did not close for any reason. Green Coin attempted to protect the deposit's refundability in all three addenda. Addenda No. 1 said: "This sale is based on a valuation of Green Coin for $85 Million."[8] Addenda Nos. 2 and 3 were more direct. Each said: "The Buyer's deposit is fully refundable if Buyer fails to close."

For purposes of summary judgment we assume, as the bankruptcy court did, that the Addenda would have amended the Purchase Agreement and rendered the $900,000 partial deposit fully refundable as Green Coin claims. Still, we also agree with the bankruptcy court that the refundability provisions are invalid. None of the three addenda were presented to the bankruptcy court for approval. As a result, they could not substantively amend the Purchase Agreement approved by the bankruptcy court by removing the Liquidated Damages Clause.

Agreements with a debtor in possession or trustee involving the use or sale of estate property outside the ordinary course of the debtor's business are subject to prior notice under Rule 2002(a)(2) and the statutory requirements of § 363(b)(1). *240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners, Ltd.)*, 200 B.R. 653, 659 (9th Cir.

---

[8] There is a genuine dispute regarding what this language meant. Green Coin claims it meant that the sale was contingent on Green Coin being valued by some unidentified entity as being worth $85 million. But this dispute is not material as explained below.

BAP 1996). The requirements protect the interests of creditors in estate assets. Debtors and trustees who wish to dispose of estate assets must demonstrate both good faith and a legitimate business purpose. *Id.* This typically means that sale agreements not approved by the bankruptcy court are unenforceable. *See In re Smith*, 352 B.R. 500, 501-03 (Bankr. N.D. Ala. 2006) (collecting cases); *see also Slaieh v. Simons*, 584 B.R. 28, 36 (C.D. Cal. 2018) (holding that plaintiff could not allege the existence of a binding sale contract with bankruptcy trustee without allegation of court approval). These cases stand for the proposition that Khadavi and Green Coin could not present one version of the Purchase Agreement to the bankruptcy court for approval but bind each other to a different version of the Purchase Agreement purporting to omit or negate material terms of the court-approved version.

In short, we agree with the bankruptcy court that the secret addenda were invalid and unenforceable for violating Rule 2002 and § 363(b)(1). Accordingly, we reject Green Coin's argument that the deposit was refundable under the addenda.

4. **Alleged cancellation of the Purchase Agreement and Escrow.**

Green Coin's remaining arguments focus on the alleged cancellation of the Purchase Agreement and the escrow. Though Green Coin's references to cancellation are myriad, its cancellation arguments generally fall into one of two broad categories: (1) Green Coin never defaulted because Khadavi cancelled the Purchase Agreement on December 6, 2021,

22

before Green Coin's duty to pay the full deposit matured; and (2) the cancellation triggered paragraph 14D(2) of the Purchase Agreement, which required return of the full deposit to Green Coin.[9]

### a. Green Coin was in default on December 3, 2021.

Our prior analysis of the contractual due date for the full deposit disposes of Green Coin's first cancellation argument. Accepting that Khadavi extended the due date for payment of the balance of the earnest money deposit, Green Coin was required to deposit an additional $1,650,000 into escrow by December 2, 2021. It did not and was in default of the Purchase Agreement at that time. As explained above, the NBP did not extend the due date for the balance of the deposit. Thus, Green Coin already was in default when the so-called December 6, 2021 cancellation allegedly occurred.

### b. Khadavi did not unilaterally cancel the Purchase Agreement under ¶ 14D(2).

Green Coin's second cancellation argument is patently dependent on its claim that Khadavi unilaterally cancelled the Purchase Agreement on December 6, 2021. To support this point, Green Coin relies on a single sentence from Khadavi's declaration filed on December 6, 2021: "As of

---

[9] As the bankruptcy court aptly pointed out, these two arguments are mutually exclusive. The first denies that default ever occurred, while the second presupposes the existence of a default since paragraph 14D(2) is premised on the buyer's failure to perform a contractual obligation "by the time specified in this Agreement." Green Coin cannot have it both ways.

December 6, 2021, Green Coin failed to perform, as a result of which I cancelled the agreement with Green Coin for the sale of the Sarbonne Property." Green Coin contends that this declaration testimony constituted the rescission provided for in paragraph 14D(2). With this statement, Green Coin believes that Khadavi relinquished any claim his bankruptcy estate might have had in the deposit.

The California Association of Realtors utilizes its Cancellation of Contract, Release of Deposit and Cancellation of Escrow (Form CC) for the cancellation of California Residential Purchase Agreements and other contracts. The document provides for cancellation of the contract and instructions for the release of any deposit as well as the cancellation of escrow. The parties to the contract may select various reasons for cancellation of the contract, including the failure to take applicable contractual actions after being given a Notice to Perform. Alternately, the parties may mutually agree to cancel the contract. Similarly, the parties may choose from several options how any deposit is to be handled.

Khadavi never executed a Cancellation Form for unilateral rescission of the Purchase Agreement. As we previously stated, the two versions of the Cancellation Form in the summary judgment record both provided for cancellation by mutual agreement. In fact, there is no writing in the record other than Khadavi's statement in his declaration even remotely suggesting a unilateral cancellation. Presumably, Green Coin relies on this declaration testimony to support its rescission argument because paragraph 14H of the

Purchase Agreement requires any party purporting to cancel or rescind the agreement to do so in writing.

All other evidence in the record demonstrates that Green Coin has taken this single sentence out of context. Khadavi's declaration was submitted in response to the court's direction that the debtor provide an update after the December 1, 2021 continued status hearing on the sale motion. At the status hearing, debtor's counsel explained that the debtor had just sent the NBP to Green Coin giving it three days to cure the default: "This is a real estate form that basically says you've got three days to put up the money or we're canceling this deal." When asked by the court if there was a nonrefundable deposit, counsel responded that the issue was "a matter of some contention." But counsel made it clear that "[c]ertainly the Debtor's going to seek to retain the deposit" in the event Green Coin did not cure the default.

After his December 6, 2021 declaration, Khadavi and Green Coin negotiated a mutually agreed-upon cancellation of both the Purchase Agreement and the related escrow. The key term the parties negotiated was whether and how the $900,000 should be split between Khadavi and Green Coin. As a result of the parties' efforts, they presented in the adversary proceeding two different versions of the Cancellation Form, both dated December 10, 2021, as well as several different versions of their terms for disposal of the funds in escrow. Nonetheless, it is undisputed that on both of the competing versions of the Cancellation Form, the parties

25

checked the box stating that the Purchase Agreement was being cancelled "Per Mutual Agreement" rather than one of the two boxes providing for unilateral cancelation of the Purchase Agreement.

Moreover, if Khadavi was cancelling the Purchase Agreement under paragraph 14D, the partial deposit should have been returned to Green Coin and the appropriate box checked on the form. Yet on both versions of the Cancellation Form, the parties checked the box for "other" disposition of the funds held in escrow. And they wrote "See Addendum 3" to reference their specific terms for disposition of the escrow funds. Rather than returning the deposit to Green Coin as required under paragraph 14D, all versions of this addendum dispose of the deposit by sending some amount to Khadavi in a split of the monies in one fashion or another.[10]

Initially, there was no dispute that the parties sought to mutually cancel the Purchase Agreement on December 10, 2021, and split the monies. Indeed, it was Green Coin that brought this matter to light when it disclosed one version of the Cancellation Form and addendum in its answer to Khadavi's complaint. In its opposition to the trustee's summary

---

[10] To be clear, there is a genuine dispute as to which version of the attachment to the Cancellation Form providing for disposal of the escrowed funds accurately reflects the parties' agreement. But this dispute is not material. Indeed, Green Coin states in its reply brief on appeal that it does not seek to enforce any of the Cancellation Forms. The only material fact for purposes of summary judgment and this appeal is undisputed: by mutual agreement the parties attempted to split disposition of the deposit. This is wholly inconsistent with Green Coin's claim that Khadavi intended to relinquish the estate's rights in the deposit by unilaterally cancelling the Purchase Agreement in his December 6, 2021 declaration.

26

judgment motion, Green Coin also repeatedly referred to the parties' mutual agreement to cancel the Purchase Agreement. However, in its supplemental papers opposing the summary judgment motion, Green Coin claimed for the first time that Khadavi unilaterally cancelled the Purchase Agreement and that its prior statements regarding cancellation by mutual agreement only were meant to refer to the cancellation of escrow.

Green Coin argues that the facts and circumstances surrounding the putative cancellation efforts demonstrated disputed questions of fact that required the bankruptcy court to deny summary judgment. We disagree. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

Green Coin seizes on one sentence from Khadavi's declaration made in a status report required by the court. From this, Green Coin attempts to raise a genuine dispute as to what Khadavi intended to do. All other evidence in the record, including the parties' actions, are directed towards a formal mutual agreement to cancel the Purchase Agreement and divide the deposit. The contemporaneous transaction documents are flatly inconsistent with a unilateral cancellation that would have triggered Green Coin's right under paragraph 14D to reclaim the full deposit. Under these circumstances we will follow *Scott*. The record demonstrates that the parties attempted to mutually cancel the Purchase Agreement and split the

deposit. Green Coin's reliance on Khadavi's statement fails to raise a genuine dispute that he unilaterally canceled the Purchase Agreement and relinquished the estate's interest in the deposit.

### c. None of the versions of the cancellation agreement were approved by the bankruptcy court and hence all were invalid and unenforceable.

As for the various versions of the parties' mutual agreement to cancel the Purchase Agreement and to split and dispose of the deposit funds held in escrow, any dispute regarding the actual contents of the cancellation agreement is immaterial. We agree with the bankruptcy court that whatever agreement may have been reached, regardless of version, it constituted an attempted compromise of the parties' dispute over the deposit. As such, the compromise was subject to notice and the requirements of Rule 9019. Again, the parties failed to present the mutual cancellation to the court for approval. *See generally Goodwin v. Mickey Thompson Ent. Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*, 292 B.R. 415, 420-21 (9th Cir. BAP 2003) (describing prerequisites to compromise).

Put differently, the cancellation agreement is analogous to the refundability provisions we rejected earlier. It qualified as an unauthorized agreement to use or sell an estate asset: the right to dispose of the deposit under the Liquidated Damages Clause. Without court approval, the parties' attempted agreement to cancel the Purchase Agreement and dispose of the deposit was invalid and unenforceable against the

bankruptcy estate. *See Slaieh*, 584 B.R. at 36; *In re Smith*, 352 B.R. at 503.

In sum, the bankruptcy court correctly determined on summary judgment that there was no unilateral cancellation of the Purchase Agreement or relinquishment of the estate's interest in the deposit under the Liquidated Damages Clause. Nor was the parties' mutual cancellation agreement—whatever its actual terms—effective to bind the estate to a disposition of the deposited funds.[11]

## CONCLUSION

For the reasons set forth above, we AFFIRM.

---

[11] For the first time on appeal, Green Coin asserted that the bankruptcy court should have rewritten the Purchase Agreement to mirror the standard terms typically set forth in form contracts for the sale of real property subject to probate proceedings. In essence, Green Coin is asking for reformation of the Purchase Agreement. But reformation requires the proponent to bring a cause of action for reformation, as well as plead and prove the elements for the requested relief. *See Pascoe v. Morrison*, 219 Cal. 54, 55–56 (1933) (citing Cal. Civ. Code § 3399). Because Green Coin failed to do so, we decline its belated invitation to rewrite the parties' contract.